**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

MINELY DIAZ, on behalf of herself and
all others similarly situated,

      Plaintiff,                                Case No. 0:20-cv-60933-RKA

v.

SPIRIT   AIRLINES,   INC.,   a   Delaware
corporation,

      Defendant.
_____/

**DEFENDANT SPIRIT AIRLINES, INC.'S ANSWER**
**AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S**
**CLASS ACTION COMPLAINT AND JURY DEMAND**

Defendant, SPIRIT AIRLINES, INC. ("**Defendant**" or "**Spirit**"), by and through the

undersigned counsel, pursuant to Fed. R. Civ. P. 7 and 8, files its Answer and Affirmative Defenses

to Plaintiff, MINELY DIAZ's, Class Action Complaint and Jury Demand (ECF No. 1, the

"**Complaint**"), and states as follows:

**INTRODUCTION**[1]

1.      Plaintiff Minely Diaz ("Plaintiff"), by and through her counsel, files this Class

Action Complaint against Spirit Airlines, Inc. ("Defendant" or "Spirit") on behalf of herself and

on behalf of a class of similarly situated individuals, and alleges, upon personal knowledge as to

her own actions, and upon investigation of counsel as to all other matters, as follows:

---

[1] Headings herein are used solely to mirror the headings contained in the Complaint and should
not be construed as an admission or denial by Spirit on any issue.

**ANSWER**:   Paragraph 1 of the Complaint is admitted only to the extent that this action purports to be filed as a class action lawsuit.  The remaining allegations contained in paragraph 1 of the Complaint are denied.

## NATURE OF THE ACTION

2.     In the midst of the greatest public health and economic crisis in living memory, Defendant, one of the nation's largest air carriers, has sought to shift its losses onto its innocent passengers, furthering the financial hardship endured by people across the country.

**ANSWER**:   Spirit denies the allegations contained in paragraph 2 of the Complaint.

3.     Each of Defendant's airfare tickets encompasses a contractual agreement between it and its passengers.  That agreement gives passengers the right to a refund if their flight is cancelled.

**ANSWER**:   Spirit admits the allegations contained in paragraph 3 of the Complaint to the extent that each Spirit passenger agrees to the terms and conditions of Spirit's Contract of Carriage upon purchasing an airfare ticket.  Spirit objects to the extent that the allegations contained in paragraph 3 of the Complaint seek legal conclusions, and without waiving its objections, the remaining allegations contained in paragraph 3 of the Complaint are denied as stated.  In addition, Spirit's Contract of Carriage speaks for itself.

4.     With mounting cancellations due to the COVID-19 pandemic, Defendant has sought to refrain from paying out the refunds for cancelled flights to which its passengers are entitled.

**ANSWER**:   Spirit denies the allegations contained in paragraph 4 of the Complaint.

5.     Plaintiff brings this action on behalf of themselves and a class of similarly situated individuals (collectively, "Plaintiffs") who were deprived of refunds for cancelled flights.

**ANSWER**:      Spirit admits paragraph 5 of the Complaint only to the extent that this action purports to be filed as a class action lawsuit.  The remaining allegations contained in paragraph 5 of the Complaint are denied.

6.      Defendant has quietly sought to force its passengers to endure the financial losses that its own contract created for it in the entirely foreseeable scenario that world occurrences would disrupt the domestic travel industry.

**ANSWER**:      Spirit denies the allegations contained in paragraph 6 of the Complaint.

7.      Defendant's uniform conduct is equally applicable to the class.  Plaintiff brings this class action against Defendant for breach of contract and seeks an order requiring Defendant to, among other things: (1) refrain from issuing coupons in lieu of refunds to any Class member who has not requested coupons; and (2) pay damages and/or restitution to Plaintiff and Class members.

**ANSWER**:      Paragraph 7 of the Complaint is admitted only to the extent that this action purports to be filed as a class action lawsuit for breach of contract.  The remaining allegations contained in paragraph 7 of the Complaint are denied.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).  The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are numerous class members who are citizens of states different from Defendant.

**ANSWER**:      Spirit denies the allegations contained in paragraph 8 of the Complaint.

9.      This Court has personal jurisdiction over Defendant because it conducts significant, substantial, and not-isolated business activities in Florida, is headquartered in Florida, and a substantial portion of the acts complained of took place in Florida.

**ANSWER**:    Spirit objects to the extent that the allegations contained in paragraph 9 of the Complaint seek legal conclusions.  Without waiving any objections and subject thereto, paragraph 9 of the Complaint is admitted to the extent that Spirit's principal place of business is located in the Southern District of Florida.  The remaining allegations contained in paragraph 9 of the Complaint are denied.

10.    Venue is proper in this district because Defendant conducts business and has its principal place of business in this District and many of the events that gave rise to Plaintiffs' claims occurred in this District.

**ANSWER**:    Spirit objects to the extent that the allegations in paragraph 10 of the Complaint seek legal conclusions.  Without waiving any objections and subject thereto, paragraph 10 of the Complaint is admitted to the extent that venue is proper because, *inter alia*, Spirit's principal place of business is located in the Southern District of Florida.  The remaining allegations contained in paragraph 10 of the Complaint are denied.

## PARTIES

11.    Plaintiff Minely Diaz (f/k/a Minely Martinez) is an individual and a citizen of New Jersey.

**ANSWER**:    With respect to the allegations contained in paragraph 11 of the Amended Complaint, Spirit is without knowledge as to whether Plaintiff is a citizen of the State of New Jersey.

12.    Defendant Spirit Airlines Inc. is a corporation organized under the laws of Delaware with its principal place of business located in Miramar, Florida.

**ANSWER**:    Spirit admits the allegations contained in paragraph 12 of the Complaint.

13.     Spirit is a major north American airline company that carried approximately 34 million passengers in 2019.

**ANSWER**:     Spirit objects to the extent that the allegations contained in paragraph 13 of the Complaint are narrative and/or argumentative.  Plaintiff also fails to identify the source of this allegation.  Accordingly, without waiving any objections and subject thereto, the allegations contained in paragraph 13 of the Complaint are denied as stated.

14.     Spirit is based in Miramar, Florida, and its flight network includes regular routes to 48 destinations throughout the continental United States, as well as in the Caribbean, Mexico, and South America.

**ANSWER**:     Spirit objects to the extent that the allegations contained in paragraph 14 of the Complaint are narrative and/or argumentative.  Plaintiff also fails to identify the source of this allegation.  Accordingly, without waiving any objections and subject thereto, the allegations contained in paragraph 14 of the Complaint are denied as stated.

15.     Defendant offers and sells flight tickets directly to customers, who make monetary payments to Defendant in exchange for a selected flight itinerary that conforms to customer's specifically selected travel schedule.

**ANSWER**:     Spirit admits the allegations contained in paragraph 15 of the Complaint to the extent the Spirit offers and sells flight tickets directly to customers, who make monetary payments to Spirit in exchange for a selected flight itinerary.  Spirit objects to the extent that the allegations contained in paragraph 15 of the Complaint are narrative and/or argumentative. Without waiving any objections and subject thereto, the remaining allegations contained in paragraph 15 of the Complaint are denied as stated.

16.     Defendant collects passenger identification information as part of each ticket sale, including name, address, and telephone information, and each ticket purchased guarantees customers a seat on a specific, scheduled flight departing at a specific time from a specific airport.

**ANSWER**:     Spirit objects to the extent that the allegations contained in paragraph 16 of the Complaint are narrative and/or argumentative.  Without waiving any objections and subject thereto, the allegations contained in paragraph 16 of the Complaint are denied as stated.

17.     As part of each ticket purchase, Defendant makes a promise and warranty to customers that in the event of a flight cancellation or substantially interrupted flight, customers are entitled to a full cash refund.

**ANSWER**:     Spirit objects to the extent that the allegations contained in paragraph 17 of the Complaint are narrative and/or argumentative.  Without waiving any objections and subject thereto, the allegations contained in paragraph 17 of the Complaint are denied as stated.

18.     Passengers' purchase and use of Defendant's services is governed by Defendant's Contract of Carriage.

**ANSWER**:     Spirit admits the allegations contained in paragraph 18 of the Complaint.

19.     Defendant's Contract of Carriage has been updated a number of times in recent years, including December 7, 2018, February 24, 2020, and May 4, 2020.

**ANSWER**:     Spirit admits the allegations contained in paragraph 19 of the Complaint to the extent that its Contract of Carriage is updated from time to time.  The remaining allegations contained in paragraph 19 of the Complaint are denied as stated.

20.     The salient terms of Defendant's Contract of Carriage for purposes of Plaintiff and the Class are the same throughout each version.

**ANSWER**:      Spirit objects to the extent that the allegations contained in paragraph 20 of the Complaint are narrative and/or argumentative.  Without waiving any objections and subject thereto, the allegations contained in paragraph 20 of the Complaint are denied as stated.

21.      Section 10.2 of Defendant's Contract of Carriage covers refunds for flights that do not operate.

**ANSWER**:      The allegations contained in paragraph 21 of the Complaint are denied as stated.  The Contract of Carriage speaks for itself.

22.      That section provides that

[i]n the event that Spirit is unable to provide a previously confirmed seat and is unable to reroute the guest via Spirit, Spirit will refund as indicated below … If no portion of the reservation has been used, the refund will be equal to the fare paid by the guest … If a portion of the reservation has been used, the refund will be equal to the amount of the unused portion … Guests involved in a Spirit Airlines cancellation or delay in excess of two (2) hours will have three (3) options available to them: 1) re-accommodation, 2) a credit for future travel, or 3) a refund … Refunds will only be issued to the form of payment used to complete the original purchase.

**ANSWER**:      The allegations contained in paragraph 22 of the Complaint are denied as stated.  The Contract of Carriage speaks for itself.

23.      The Contract of Carriage further dictates that "[a]ll refunds will be subject to government laws, rules, regulations, or orders of the country in which the ticket was originally purchased and the country in which the refund is being made."

**ANSWER**:      The allegations contained in paragraph 23 of the Complaint are denied as stated.  The Contract of Carriage speaks for itself.

24.      Defendant's contract of carriage does not promise, permit, or require the issuance of any vouchers or coupons lieu of monetary refunds in the event of cancellation unless that option is selected by the passenger.

**ANSWER**:    The allegations contained in paragraph 24 of the Complaint are denied as stated.  The Contract of Carriage speaks for itself.

25.    Under U.S. law, 49 U.S.C. § 41712 prohibits unfair or deceptive practices in the air carrier industry and "since at least the time of an Industry Letter of July 15, 1996 … the [DOT's] Aviation Enforcement Office has advised carriers that refusing to refund a non-refundable fare when a flight is cancelled and the passenger wishes to cancel is a violation" of that section. Enhancing Airline Passenger Protections, 76 Fed. Reg. 23110-01, 23129.

**ANSWER**:    Spirit objects to the extent that the allegations contained in paragraph 25 of the Complaint seek legal conclusions, and without waiving its objections, the allegations contained in paragraph 25 of the Complaint are denied as stated.  In addition, 49 U.S.C. § 41712 and 76 Fed. Reg. 23110-01, 23129 speak for themselves, and notwithstanding, the Complaint does not purport to assert a claim for unfair or deceptive practices.

26.    As part of each ticket purchase, Defendant made a promise and warranty to customers that in the event of a flight cancellation or substantially interrupted flight, customers are entitled to a full monetary refund.

**ANSWER**:    The allegations contained in paragraph 26 of the Complaint are denied as stated.  The Contract of Carriage speaks for itself.

### Defendant's Response to the Covid-19 Pandemic

27.    On January 30, 2020, the World Health Organization declared the Covid-19 virus a public health emergency of international concern.

**ANSWER**:    Spirit admits the allegations contained in paragraph 27 of the Complaint.

28.     As of late-February, Covid-19 confirmed cases in the United States were detected and exponentially increasing, including cases that were not caused by recent international travel but through community spread.

**ANSWER**:     As phrased, Spirit is without knowledge as to the allegations contained in paragraph 28 of the Complaint.

29.     On March 11, 2020, the WHO officially declared Covid-19 a global pandemic.

**ANSWER**:     Spirit admits the allegations contained in paragraph 29 of the Complaint.

30.     Throughout March, daily cases of Covid-19 were increasing dramatically as well, in addition to many of the countries where Defendant offers air travel services.

**ANSWER**:     As phrased, Spirit is without knowledge as to the allegations contained in paragraph 30 of the Complaint.

31.     As part of each ticket purchase, Defendant made a promise and warranty to customers that in the event of a flight cancellation or substantially interrupted flight, customers are entitled to a full cash refund.

**ANSWER**:     Spirit objects to the allegations contained in paragraph 31 of the Complaint as they are repetitive of the allegations made in paragraph 26 of the Complaint.  Notwithstanding, the allegations contained in paragraph 31 of the Complaint are denied as stated.  The Contract of Carriage speaks for itself.

32.     Across the United States, state and local governments began issuing shelter-in-place orders that specifically prohibited non-essential travel, specifically including air travel because of the extraordinary risk that air travel presented to the ability to strictly adhere to social distancing standards and avoid inter-community and inter-state travel—both of which threatened to dramatically increase the spread of the virus.

**ANSWER**:     Spirit admits the allegations contained in paragraph 32 of the Complaint to the extent of the existence of the COVID-19 pandemic and its effect on air travel.  Spirit objects to the extent that the allegations contained in paragraph 32 of the Complaint are narrative and/or argumentative.   Accordingly, and without waiving any objections, the remaining allegations contained in paragraph 32 of the Complaint are denied as stated.

33.     The U.S. Federal Government issued social distancing guidelines that further warned of the substantial risks of human-to-human and community spread of the virus, and air travel was clearly discouraged.

**ANSWER**:     Spirit admits the allegations contained in paragraph 33 of the Complaint to the extent of the existence of the COVID-19 pandemic and its effect on air travel.  Spirit objects to the extent that the allegations contained in paragraph 33 of the Complaint are narrative and/or argumentative.   Accordingly, and without waiving any objections, the remaining allegations contained in paragraph 33 of the Complaint are denied as stated.

34.     It was entirely known and foreseeable to Defendant that many of its previously scheduled flights need to be cancelled in order to protect the public from a catastrophic infection spread and loss of life and respond to the dramatically decreased demand for air travel.

**ANSWER**:     Spirit admits the allegations contained in paragraph 34 of the Complaint to the extent of the existence of the COVID-19 pandemic and its effect on air travel.  Spirit objects to the extent that the allegations contained in paragraph 34 of the Complaint are narrative and/or argumentative.   Accordingly, and without waiving any objections, the remaining allegations contained in paragraph 34 of the Complaint are denied as stated.

35.     Yet, Defendant quietly ceased honoring contractual agreements with customers, including Plaintiffs and the putative class, by discontinuing full monetary refunds for cancelled and substantially rescheduled flights and instead providing expiring credits.

**ANSWER**:     Spirit denies the allegations contained in paragraph 35 of the Complaint.

36.     The practice of offering expiring credits is particularly wrongful and inadequate during the Covid-19 epidemic because it remains entirely unclear when normal air travel will once again be safe.

**ANSWER**:     Spirit objects to the extent that the allegations contained in paragraph 36 of the Complaint are narrative and/or argumentative.  Without waiving any objections and subject thereto, the allegations contained in paragraph 36 of the Complaint are denied as stated.

37.     The future flight credits provide Defendant additional opportunities to charge service, processing, baggage, and other fees that will ensure Defendant additional future profits— while retaining Plaintiffs' cash in the interim—substantially diminishing any value for Plaintiffs and the putative class.

**ANSWER**:     Spirit objects to the extent that the allegations contained in paragraph 37 of the Complaint are narrative and/or argumentative.  Without waiving any objections and subject thereto, the allegations contained in paragraph 37 of the Complaint are denied as stated.

38.     Recognizing the abuse, and potential for abuse, by Defendant and other airline companies, the United States Department of Transportation ("DOT") was forced to step in to remind Defendant that they remain under an obligation to provide passengers with their rights to a refund for a cancelled flight resulting from the Covid-19 pandemic.

**ANSWER**:     Spirit objects to the extent that the allegations contained in paragraph 38 of the Complaint are narrative and/or argumentative.  Without waiving any objections and subject thereto, the allegations contained in paragraph 38 of the Complaint are denied as stated.

39.     On April 3, 2020, the DOT issued a notice to remind carriers "that passengers should be refunded promptly when their scheduled flights are cancelled or significantly delayed." It notes that "[a]lthough the COVID-19 public health emergency has had an unprecedented impact on air travel, the airlines' obligation to refund passengers for cancelled or significantly delayed flights remains unchanged."

https://www.transportation.gov/sites/dot.gov/files/2020-04/Enforcement%20Notice%20Final%20April%203%202020_0.pdf (last accessed April 15, 2020).

**ANSWER**:     Spirit objects to the extent that the allegations contained in paragraph 39 of the Complaint are narrative and/or argumentative.  Without waiving any objections and subject thereto, the allegations contained in paragraph 39 of the Complaint are denied as stated.  As well, the notice issued by the DOT speaks for itself.

40.     The notice continues that:

[t]he Department is receiving an increasing number of complaints and inquiries from ticketed passengers, including many with non-refundable tickets, who describe having been denied refunds for flights that were cancelled or significantly delayed.  In many of these cases, the passengers stated that the carrier informed them that they would receive vouchers or credits for future travel.  But many airlines are dramatically reducing their travel schedules in the wake of the COVID-19 public health emergency.  As a result, passengers are left with cancelled or significantly delayed flights and vouchers and credits for future travel that are not readily usable.

Carriers have a longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier.  The longstanding obligation of carriers to provide refunds for flights that carriers cancel or significantly delay does not cease when the flight disruptions are outside of the carrier's control (e.g., a result of government

restrictions).  The focus is not on whether the flight disruptions are within or outside the carrier's control, but rather on the fact that the cancellation is through no fault of the passenger.  Accordingly, the Department continues to view any contract of carriage provision or airline policy that purports to deny refunds to passengers when the carrier cancels a flight, makes a significant schedule change, or significantly delays a flight to be a violation of the carriers' obligation that could subject the carrier to an enforcement action.

…

Specifically, the Aviation Enforcement Office will refrain from pursuing an enforcement action against a carrier that provided passengers vouchers for future travel in lieu of refunds for cancelled or significantly delayed flights during the COVID-19 public health emergency so long as: (1) the carrier contacts, in a timely manner, the passengers provided vouchers for flights that the carrier cancelled or significantly delayed to notify those passengers that they have the option of a refund; (2) the carrier updates its refund policies and contract of carriage provisions to make clear that it provides refunds to passengers if the carrier cancels a flight or makes a significant schedule change; and (3) the carrier reviews with its personnel, including reservationists, ticket counter agents, refund personnel, and other customer service professionals, the circumstances under which refunds should be made.

**ANSWER**:    Spirit objects to the extent that the allegations in paragraph 40 of the Complaint are narrative and/or argumentative.  Without waiving any objections and subject thereto, the allegations contained in paragraph 40 of the Complaint are denied as stated.  As well, the notice issued by the DOT speaks for itself.

41.    In addition to violation of its own contract of carriage, Defendant has failed to conform to the April 3, 2020 DOT Notice and 49 U.S.C. § 41712 and provide full refunds to its passengers.

**ANSWER**:    Spirit denies the allegations contained in paragraph 41 of the Complaint.

42.    Defendant has deprived Plaintiffs and the Class of the refunds to which they are entitled by 1) failing to provide refunds to their credit or debit cards; 2) issuing coupons or vouchers in place of refunds; 3) rendering it functionally impossible to specifically request refunds

over vouchers/coupons by inaccessibility of customer service, with wait times of more than two hours frequently reported; and/or 4) obscuring passengers' right to a monetary refund.

**ANSWER**:    Spirit denies the allegations contained in paragraph 42 of the Complaint.

### *Plaintiffs' Use of Defendant's Services*

43.    Plaintiff Diaz purchased a round trip ticket from Philadelphia, Pennsylvania to Las Vegas Nevada, scheduled to depart on May 14, 2020 (flight 395) and return on May 18, 2020 (flight 396).

**ANSWER**:    Spirit admits the allegations contained in paragraph 43 of the Complaint.

44.    Plaintiff paid $365.58 for her ticket, including baggage fees.

**ANSWER**:    Spirit admits the allegations contained in paragraph 44 of the Complaint.

45.    On or about March 15, 2020, the State of Nevada issued an emergency directive which resulted in the closure of all hotels and casinos.

**ANSWER**:    Spirit is without knowledge as to the allegations contained in paragraph 45 of the Complaint.

46.    Defendant cancelled Plaintiff's flights but failed to even notify her of the cancellation.  The itinerary simply disappeared from Plaintiff's online bookings.

**ANSWER**:    Spirit denies the allegations contained in paragraph 46 of the Complaint.

47.    Plaintiff seeks a refund, but Defendant is offering Plaintiff only a credit for travel within one year of booking.

**ANSWER**:    Spirit denies the allegations contained in paragraph 47 of the Complaint.

48.    Plaintiff does not want a worthless expiring credit.  She wants the refund to which she is legally entitled.

**ANSWER**:    Spirit objects to the extent that the allegations in paragraph 48 of the Complaint are narrative and/or argumentative.   Without waiving any objections and subject thereto, the allegations contained in paragraph 48 of the Complaint are denied as stated.

## CLASS ALLEGATIONS

49.    Plaintiff brings this class action under Rule 23 and seek certification of the claims and issues in this action pursuant to the applicable provisions of Rule 23.   The proposed class is defined as:

> All persons residing in the United States or its territories who purchased tickets for travel on a Spirit Airlines flight scheduled to operate from March 1, 2020 through the date of a class certification order, whose flight(s) were canceled by Frontier Airlines, and who were not provided a refund. Excluded from the Class are (a) any person who has specifically requested a coupon or voucher in lieu of a refund; (b) any person who requested and received alternative air transportation in lieu of a refund; (c) all persons who are employees, directors, officers, and agents of either Defendant; (d) governmental entities; and (e) the Court, the Court's immediate family, and Court staff.

**ANSWER**:    Spirit admits paragraph 49 of the Complaint to the extent that the Complaint attempts to seek the alleged certification.   Paragraph 49 of the Complaint is denied in that it purports to satisfy the requirements of Rule 23(a) and/or (b), or that Plaintiff and the putative class can maintain a class action against Spirit.

50.    Plaintiff reserves the right to amend or modify the Class definitions with greater specificity or division into subclasses after having had an opportunity to conduct discovery.

**ANSWER**:    Spirit denies the allegations contained in paragraph 50 of the Complaint.

51.    Numerosity. Fed. R. Civ. P. 23(a)(1).  Defendant carries approximately 34 million passengers per year on many thousands of flights.  A significant percentage of those flights during the class period have been cancelled.  At a minimum, there are tens of thousands of Class Members

but very likely many more.  The exact size of the proposed class and the identity of all class members can be readily ascertained from Defendant's records.

**ANSWER**:    Spirit lacks sufficient knowledge to form a belief as to the truth of the allegations contained in paragraph 51 of the Complaint, and on that basis denies them.

52.    Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3).  There are questions of law and fact common to the class, which questions predominate over any questions affecting only individual class members.  Common issues include:

A. Whether Defendant formed contracts with its passengers in selling them tickets for air travel;
B. Whether Defendant's conduct breaches the terms of its contracts with its passengers, including its Contract of Carriage;
C. Whether Defendant is required to provide a refund, rather than an expiring voucher, to passengers for cancelled flights.
D. The nature of the relief, including equitable relief, to which Plaintiffs and the class are entitled.

**ANSWER**:    Spirit objects to the allegations contained in paragraph 52 of the Complaint to the extent that such allegations raise questions of law and/or seek legal conclusions.  Without waiving any objections and subject thereto, the allegations contained in paragraph 52 of the Complaint are denied as stated.

53.    Typicality. Fed. R. Civ. P. 23(a)(3).  Plaintiff's claims are typical of the claims of the Class they seek to represent.  Plaintiff and all Class members were exposed to substantially similar contracts, breaches, and sustained injuries arising out of and caused by Defendant's unlawful conduct.

**ANSWER**:    Spirit objects to the allegations contained in paragraph 53 of the Complaint to the extent that such allegations raise questions of law and/or seek legal conclusions.  Without waiving any objections and subject thereto, the allegations contained in paragraph 53 of the Complaint are denied as stated.

54.     Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).  Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Further, Plaintiff's counsel is competent and experienced in litigating class actions.

**ANSWER**:     Spirit objects to the allegations contained in paragraph 54 of the Complaint to the extent that the allegations seek legal conclusions.  Without waiving any objections and subject thereto, Spirit lacks sufficient knowledge to form a belief as to the truth of the allegations regarding the experience or adequacy of Plaintiff's attorneys, and on that basis denies paragraph 54 of the Complaint.  The remaining allegations contained in paragraph 54 of the Complaint are denied.

55.     Superiority. Fed. R. Civ. P. 23(b)(3).  A class action is superior to any other available means for the fair and efficient adjudication of this controversy.  The claims of Plaintiff and individual class members are small compared to the burden and expense that would be required to separately litigate their claims against Defendant, and it would be impracticable for class members to seek redress individually.  Litigating claims individually would also be wasteful to the resources of the parties and the judicial system and create the possibility of inconsistent or contradictory judgments.  Class treatment provides manageable judicial treatment which will bring an orderly and efficient conclusion to all claims arising from Defendant's misconduct.  Class certification is therefore appropriate under Rule 23(b)(3).

**ANSWER**:     Spirit objects to the allegations contained in paragraph 55 of the Complaint to the extent that such allegations raise questions of law and/or seek legal conclusions.  Without waiving any objections and subject thereto, the allegations contained in paragraph 55 of the Complaint are denied as stated.

56.     Class certification is also appropriate under Rule 23(b)(1), as the prosecution of separate actions by individual members of the class would create the risk of adjudications with respect to individual class members that would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and substantially impair their ability to protect those interests.

**ANSWER**:     Spirit admits paragraph 56 of the Complaint to the extent that the Complaint attempts to define the putative class as alleged.  Paragraph 56 of the Complaint is denied to the extent that the Complaint purports to satisfy the requirements of Rule 23(a) and/or (b), or that Plaintiff and the putative class can maintain a class action against Spirit.

57.     Class certification is also appropriate under Rule 23(b)(2), as Defendant has acted and/or refused to act on grounds generally applicable to the class, thereby making final injunctive relief or corresponding declaratory relief appropriate for the class.

**ANSWER**:     Spirit denies the allegations contained in paragraph 57 of the Complaint.

## FIRST CAUSE OF ACTION

### Breach of Contract

58.     Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

**ANSWER**:     With respect to the allegations set forth in paragraph 58 of the Complaint, Spirit responds to paragraph 58 in the same manner that Spirit responded to the paragraphs incorporated therein by reference.

59.     A contract was formed between Plaintiff and Class members on the one hand and Defendant on the other with respect to the purchase of airfare.

**ANSWER**:     Spirit admits paragraph 59 of the Complaint to the extent that Plaintiff entered into and agreed to all of the terms and conditions of Spirit's Contract of Carriage when she

18

purchased her airline ticket.  The remaining allegations contained in paragraph 59 of the Complaint are denied.  The Contract of Carriage speaks for itself.

60.      The contract was offered by Defendant and formed at the time Plaintiff and the Class accepted it by purchasing their tickets.

**ANSWER**:    Spirit admits paragraph 60 of the Complaint to the extent that Plaintiff entered into and agreed to all of the terms and conditions of Spirit's Contract of Carriage when she purchased her airline ticket.  The remaining allegations contained in paragraph 60 of the Complaint are denied.  The Contract of Carriage speaks for itself.

61.      The contract that governs the transactions at issue in this case requires refunds for cancelled flights where the passenger does not elect to take substitute transportation.

**ANSWER**:    Spirit admits paragraph 61 of the Complaint to the extent that Plaintiff entered into and agreed to all of the terms and conditions of Spirit's Contract of Carriage when she purchased her airline ticket.  The remaining allegations contained in paragraph 61 of the Complaint are denied as stated.  The Contract of Carriage speaks for itself.

62.      Plaintiff and the Class performed their obligations under the contract.

**ANSWER**:    Spirit denies the allegations contained in paragraph 62 of the Complaint.

63.      Defendant breached the contract when they sought to provide coupons or vouchers in lieu of refunds for passengers on canceled flights.

**ANSWER**:    Spirit denies the allegations contained in paragraph 63 of the Complaint.

64.      Defendant's breaches were willful and not the result of mistake or inadvertence.

**ANSWER**:    Spirit denies the allegations contained in paragraph 64 of the Complaint.

65.      As a result of Defendant's breach Plaintiff and other Class members have been damaged in an amount to be determined at trial.

**ANSWER**:      Spirit denies the allegations contained in paragraph 65 of the Complaint.

66.     With regard to the allegations contained in the "REQUEST FOR RELIEF" and "WHEREFORE" paragraphs following paragraph 65 of the Complaint, Spirit denies class action status is appropriate, denies all alleged wrongdoing, denies that Plaintiff was damaged or aggrieved, and denies Plaintiff is entitled to any relief.  Spirit denies the remaining allegations contained in the "WHEREFORE" paragraphs following paragraph 65 of the Complaint.

67.     Spirit has retained the undersigned attorneys and have agreed to pay them a reasonable fee in connection with the litigation of this matter.

**AFFRIMATIVE DEFENSES**

**FIRST AFFIRMATIVE DEFENSE**
**(Failure to State a Claim)**

The Complaint, and each purported claim set forth therein, fails to allege facts sufficient to constitute a claim against Spirit.

**SECOND AFFIRMATIVE DEFENSE**
**(No Standing)**

Plaintiff's individual and class action claims are barred in whole or in part for a lack of standing.

**THIRD AFFIRMATIVE DEFENSE**
**(Waiver/Estoppel/Consent)**

Spirit alleges, based on information and belief, that Plaintiff's Complaint, and the claim alleged therein, is barred, in whole or in part, under the equitable doctrines of waiver, estoppel, and/or consent.

## FOURTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate)

Plaintiff and the putative class failed to mitigate their damages or take reasonable steps to minimize or prevent the damages claimed to have been suffered.

## FIFTH AFFIRMATIVE DEFENSE
### (Avoidable Consequences Doctrine)

Spirit alleges, based on information and belief, that Plaintiff failed to take reasonable advantage of available procedures to prevent her own damages, and, therefore, Plaintiff's and the putative class's damages claims are barred, in whole or in part, by the avoidable consequences doctrine.

## SIXTH AFFIRMATIVE DEFENSE
### (Statute of Limitations)

To the extent claims were brought after the expiration of the applicable statute of limitations, period of limitations, or contractual limitations period, Plaintiff's and the putative class's claims are barred.

## SEVENTH AFFIRMATIVE DEFENSE
### (Failure to Allege a Cognizable Class)

Spirit alleges that to the extent that the Complaint seeks to establish a class action, it fails to properly allege a cognizable class.

## EIGHTH AFFIRMATIVE DEFENSE
### (Lack of Typicality)

Spirit alleges that a class action is improper as the claims of the named class representatives are not typical of all putative class members.

## NINTH AFFIRMATIVE DEFENSE
### (Lack of Commonality)

Spirit alleges that a class action is improper as commonality does not exist between the putative class members.

## TENTH AFFIRMATIVE DEFENSE
### (Individualized Claims)

Spirit alleges that a class action is improper as the individualized claims of the named class representative is individual and unique to her and would not lend itself to determination of all of the claims of the purported putative class members.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Failure to plead with sufficient facts)

Spirit alleges that Plaintiff has failed to plead with sufficient facts and specificity as required by the Federal Rules of Civil Procedure, including Fed. R. Civ. P. 8(a).

## TWELFTH AFFIRMATIVE DEFENSE
### (Full Compensation to Named Plaintiff)

Spirit alleges that the named Plaintiff, due to her inaction, was fully compensated in accordance with Spirit's Contract of Carriage and in compliance with the law.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (Federal Preemption)

Federal law, including but not limited to the Airline Deregulation Act of 1978, 49 U.S.C. § 41713, and/or the Federal Aviation Act of 1958, 49 U.S.C. § 40101 *et seq.*, and/or the Federal Aviation Regulations, 14 C.F.R. § 1.1, *et seq.* preempts Plaintiff's and the putative class's state law claims in whole or in part.

## FOURTEENTH AFFIRMATIVE DEFENSE
### (Contract of Carriage Bars Class Action Allegations)

Plaintiff's and the putative class's claims are barred in whole or in part by Spirit's Contract of Carriage.  Spirit's Contract of Carriage is always available to passengers and the general public

22

from a link on its website at https://content.spirit.com/ Shared/en-us/Documents/Contract_of_Carriage.pdf. Additionally, with every passenger's ticket purchase – whether made by calling Reservations, on spirit.com, on the Spirit app, or at the airports – Spirit provides notice of its Contract of Carriage, and the incorporation of its terms, and makes the full text of the Contract of Carriage available to passengers via web link, through the Spirit app, by mail, at the airports, and at ticket offices. The foregoing complies with any and all applicable federal common law and regulations, including but not limited to 14 C.F.R. §§ 253.4(a) and 253.5(a).

### FIFTEENTH AFFIRMATIVE DEFENSE
### (Complete Performance)

Spirit is discharged from all liability due to fully performing and discharging all duties.

### SIXTEENTH AFFIRMATIVE DEFENSE
### (Waiver)

Plaintiff's and the putative class's claims are barred in whole or in part by waiver, including but not limited to the class action waiver provision in Spirit's governing Contracts of Carriage. The Contract of Carriage provides for an explicit waiver of the class action certification that Plaintiff now seeks. Specifically, the Contract of Carriage unequivocally and unambiguously provides, under § 13.2, that:

> No Class Action – Any case brought pursuant to this Contract of Carriage, Spirit's Tarmac Delay Plan, or Spirit's Guest Service Plan **must be brought in a party's individual capacity and not as a plaintiff or class member in any purported class or representative proceeding.**

ECF No. 1 at ¶¶ 18, 43. [emphasis added].

### SEVENTEENTH AFFIRMATIVE DEFENSE
### (No Actual Damages)

Plaintiff and the putative class suffered no actual damages related to Spirit's alleged acts and/or breaches.

**EIGHTEENTH AFFIRMATIVE DEFENSE**
**(Failure to Comply with Condition Precedent)**

Plaintiff failed to comply with one or more conditions precedent to the Contract of Carriage in seeking this action for breach of contract.

**NINETEENTH AFFIRMATIVE DEFENSE**
**(Lack of Subject Matter Jurisdiction)**

Plaintiff's individual amount in controversy does not provide a proper basis to invoke this Court's exercise of subject matter jurisdiction.

**TWENTIETH AFFIRMATIVE DEFENSE**
**(No Private Right of Action under the DOT)**

There is no private cause of action under the U.S. Department of Transportation ("**DOT**") and the DOT Enforcement Notice (the "**DOT Notice**") referenced by Plaintiff in the Complaint, and as such, any such relief Plaintiff seeks via the DOT Notice must be stricken and/or denied.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**
**(No Basis for Equitable Remedy)**

Plaintiff has no basis for an equitable remedy of specific performance as Plaintiff is bound to the terms and conditions of the Contract of Carriage.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**
**(Waiver of Jury Trial)**

The Contact of Carriage contains the following waiver of jury trial provision in § 13.1:

> This Contract of Carriage will be governed by and construed in accordance with the laws of the United States of America and the State of Florida without regard to conflict of law principles or law. **All right to trial by jury in an action, proceeding or counterclaim arising out of or in connection with this Contract of Carriage is irrevocably waived**.

ECF No. 1 at ¶¶ 18, 43. [emphasis added].  Plaintiff agreed to the terms and conditions of the Contract of Carriage.  *Id*.  Plaintiff cannot allege a claim to enforce the Contract of Carriage and

simultaneously avoid the jury trial waiver contained in § 13.1 thereof.  As such, she irrevocably waived any right to trial by jury in connection with the Contract of Carriage, and Plaintiff's Jury Demand (ECF No. 1 at p. 12) should be stricken.

### TWENTY-THIRD AFFIRMATIVE DEFENSE
**(No Basis for Attorneys' Fees and Costs)**

Plaintiff's demand for attorneys' fees and costs [ECF No. 1 at p. 12] must be stricken as the Contract of Carriage does not contain a provision for the award of attorneys' fees and costs for a prevailing party.  Notwithstanding, Plaintiff does not allege any contractual or statutory basis for the recovery of attorneys' fees and costs, and as such, Plaintiff's demand must be stricken.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE
**(Reservation)**

Spirit reserves the right to modify, withdraw, and/or add affirmative defenses as information becomes available during investigation and discovery conducted hereafter.

WHEREFORE, Defendant, SPIRIT AIRLINES, INC., respectfully requests this Court enter an order dismissing the Amended Complaint, together with such other and further relief as this Court deems just and proper.

Dated: June 19, 2020.

Respectfully submitted,
**FRANK, WEINBERG & BLACK, P.L.**
s/Steven W. Marcus
Steven W. Marcus, Esq.
Florida Bar No. 194980
Email:  smarcus@fwblaw.net
Marc A. Silverman, Esq.
Florida Bar No. 144444
Email:  msilverman@fwblaw.net
Stephanie C. Deutsch, Esq.
Florida Bar No. 503584
Email:  scd@fwblaw.net
FRANK, WEINBERG & BLACK, P.L.
7805 S.W. 6th Court
Plantation, FL 33324
Telephone:  (954) 474-8000
***Counsel for Defendant, Spirit Airlines, Inc.***